## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | | |
|---|---|---|
| DAMIAN WATERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The Plaintiff DAMIAN WATERS (hereinafter referred to as "WATERS") and for his complaint against the Defendant UNITED PARCEL SERVICE, INC. (hereinafter referred to as "UPS") states:

1.     This action is brought for damages sustained by WATERS by reason of UPS' violation of his civil rights under 42 U.S.C. § 1981.

2.     At all times relevant hereto, WATERS was and is a citizen of the United States, is a resident of the Northern District of Illinois and is African American.

3.     At all times relevant hereto, UPS was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 55 Glenlake Parkway NE, Atlanta, Georgia 30328.

4.     This Court has jurisdiction pursuant to 28 USC §1343 and §1331.

5.     Venue is appropriate in this Court pursuant to 28 USC §1391 since the complained of conduct occurred in this District.

6.    On or about March 13, 2017, WATERS was hired by UPS to the position of Feeder Driver and worked out of UPS' Jefferson Street location in Chicago, Illinois.

7.    From the time that WATERS began his employment with UPS through July 2, 2019, he received favorable reviews and commendations from his supervisors.

8.    At all times relevant hereto, it was the policy of UPS not to discriminate against any employee on the basis of his or her race.

9.    At all times relevant hereto, UPS knew that WATERS was African American.

10.   By virtue of being employed by UPS, WATERS was subject to the Collective Bargaining Agreement that existed between Teamsters Local 710 and UPS.

11.   Moreover, Caucasian Feeder Drivers of UPS were subject to the same Collective Bargaining Agreement as WATERS.

12.   On July 2, 2019, WATERS was dispatched from UPS' terminal located on Jefferson Street in Chicago, Illinois.

13.   WATERS was directed to take a load of various packages to UPS' terminal located in Plainfield, Indiana.

14.   WATERS arrived at the UPS Plainfield, Indiana terminal between 12:00 a.m. and 1:00 a.m. on July 3, 2019.

15.   After dropping off the various packages at the UPS Plainfield terminal, WATERS was then directed to drop off additional UPS packages at UPS' terminal in Indianapolis, Indiana.

16.     Before he left from Plainfield, Indiana to go to UPS' terminal in Indianapolis, Indiana, WATERS received a call from a dispatcher at UPS' Jefferson Street terminal in Chicago who requested that WATERS take a dolly with him to Indianapolis.

17.     WATERS obtained a dolly from UPS' Plainfield, Indiana terminal, attached it to the rear of his truck and proceeded to Indianapolis.

18.     After leaving UPS' Plainfield, Indiana terminal, WATERS drove for approximately one mile when the dolly began to act erratically and detached from the rear of the truck. This resulted in minor damage to the rear of the truck.

19.     WATERS immediately pulled over to the side of the road, called the dispatcher at UPS' Chicago terminal on Jefferson Street and advised the dispatcher of the detachment of the dolly.

20.     WATERS also spoke with the manager on duty and explained what happened.

21.     The dispatcher asked if WATERS could reattach the dolly and return to UPS' Plainfield terminal.

22.     WATERS was able to reattach the dolly and drove back up UPS' Plainfield, Indiana facility.

23.     Upon arrival at UPS' Plainfield, Indiana facility, WATERS spoke to the manager at UPS' Jefferson Street facility in Chicago who requested that he submit photographs of the dolly.

24.     WATERS took photographs of the dolly and sent them to the manager.

25.     The manager subsequently contacted WATERS and advised him that she was taking him out of service.

26.     A UPS driver from Indianapolis subsequently came to the Plainfield, Indiana facility and drove WATERS back to the Chicago terminal.

27.     Upon arrival, WATERS was requested by the manager at the Jefferson Street terminal in Chicago to prepare a statement to which he complied.

28.     After he submitted the statement to the Operations Manager at the Jefferson Street facility in Chicago, WATERS was advised that he was terminated.

29.     This termination occurred without anyone speaking to WATERS.

30.     Upon being advised that he was terminated, WATERS asked if UPS had determined whether there was an equipment malfunction since WATERS did not engage in any conduct that would lead to the dolly becoming non-functional.

31.     UPS would not respond to WATERS' inquiry and merely reiterated that he was terminated.

32.     The decision to terminate WATERS was in direct violation of 42 U.S.C. § 1981 since Caucasian Feeder Drivers had experienced similar problems with dollies and those drivers were not terminated.

33.     Moreover, UPS never produced any maintenance records with regard to the dolly that showed that it was in good working order at the time that WATERS was given the dolly by UPS personnel in Plainfield, Indiana.

34.     Despite WATERS' request, UPS never furnished him with those maintenance records.

4

35.     Rather, the reason that UPS terminated WATERS was due to his race since he did not engage in any violation of any policy or practice of UPS that would warrant his termination.

36.     UPS, has, therefore, discriminated against WATERS because of his race in violation of his rights under 42 U.S.C. § 1981.

37.     UPS' violation of WATERS' rights under 42 U.S.C. § 1981 has caused him pecuniary damages.

WHEREFORE the Plaintiff DAMIAN WATERS requests that this Court enter judgment in his favor and against the Defendant UNITED PARCEL SERVICE, INC. as follows:

a.      Requiring UPS to reinstate WATERS to his position at the rate of pay comparable to what he would have been receiving if not for the civil rights violations committed against him by UPS.

b.      Making WATERS whole as to all salary, benefits and seniority status that would have accrued but for the civil rights violations committed by UPS.

c.      Awarding WATERS compensatory damages in an amount to be determined at trial;

d.      Awarding WATERS attorney's fees, costs and prejudgment interest.

e.      Awarding WATERS such other and further relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,


/s/Joel F. Handler
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite510
Chicago, Illinois 60601
jhandler@handlerlawgroup.com
(312) 832-0008
Attorney for the Plaintiff,
DAMIAN WATERS